**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ERIC WEDGEWOOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **19 C 3470** |
| | ) | |
| **THE DAILY BEAST COMPANY LLC,** | ) | **Judge John Z. Lee** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

Plaintiff Eric Wedgewood has filed suit against The Daily Beast Company, LLC, alleging that it defamed him (Count I), placed him in a false light (Count II), and committed intentional infliction of emotional distress (Count III). The Daily Beast has moved to dismiss [20]. For the reasons set forth below, the motion is granted.

**Background**[1]

Eric Wedgewood is the creator of Content Zone, a page that collects and distributes memes.[2] Compl. ¶ 21, ECF No. 1-1. The Daily Beast hosts a news and

---

[1] When reviewing a motion to dismiss, the Court assumes that the facts alleged in the complaint are true and draws all possible inferences in favor of the Plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[2] A meme is "[a]n image, video, piece of text, etc., typically numerous in nature, that is copied and spread rapidly by internet users, often with slight variations." *See Meme*, Oxford English Dictionary Online, https://www.oed.com/view/Entry/239909 (last visited Dec. 20, 2019).

opinion website. *Id.* ¶ 12. And Taylor Lorenz worked as a content journalist for that site. *Id.*

On April 14, 2018, an anonymous Instagram account began impersonating Wedgewood. *Id.* ¶ 1. For about a week, the account posted false statements accusing Wedgewood of pursuing underage girls. *Id.* ¶ 2. Just eight days after the account was created, Instagram shut it down. *Id.*

At around the same time, Lorenz began investigating Wedgewood. *Id.* ¶ 12. Although Lorenz's research methods remain unclear, she claims to have spoken with several anonymous sources who received improper messages from him. *Id.* ¶¶ 13–16. At the end of her investigation, Lorenz invited Wedgewood to comment on her story, but did not interview him or otherwise inform him about the nature of her research. *Id.* ¶ 12.

Soon, The Daily Beast published Lorenz's article on Wedgewood. *Id.* ¶ 20. Titled "'He Started Messaging Me When I was 16': Female Members Slam 'Content Zone's' Creator," the article quoted two anonymous women who criticized Wedgewood for hitting on them when they were underage. *Id.* ¶¶ 13–20. With Wedgewood's alleged misconduct as a starting point, Lorenz went on to describe a broader problem with Instagram's meme pages. *Id.* ¶ 22. "[I]t [i]s sadly unsurprising to see an older man [such as Wedgewood] using an anonymous meme account to allegedly pick up young women," Lorenz reported, as "this type of behavior is rampant on [Instagram]." Mem. Supp. Mot. Dismiss, Ex. A, Daily Beast Article ("Article"), at 4, ECF No. 21-1.

Wedgewood faults many aspects of Lorenz's reporting. For example, he notes that she does not seem to have corroborated the claims of the anonymous sources quoted in her article. Compl. ¶ 18. He also chastises Lorenz for failing to investigate the possible connection between those sources and the Instagram account that had targeted him. *Id.* ¶ 19. Committed to clearing his name, Wedgewood filed this lawsuit against The Daily Beast.

**Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). For that reason, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

Wedgewood charges The Daily Beast with three common law torts: defamation (Count I); false light (Count II); and intentional infliction of emotional distress (Count III). As The Daily Beast sees it, Wedgewood has failed to state a plausible claim on any of these grounds. *See* Fed. R. Civ. P. 12(b)(6). The Court considers each count in turn.

### I. Defamation

In Count I, Wedgewood argues that The Daily Beast defamed him by reporting that he flirted with underage girls. Under Illinois law, a statement is defamatory if it "tends to cause such harm to the reputation of another that is lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992). To state a plausible defamation claim, a plaintiff must show that: (1) "the defendant made a false statement about the plaintiff," (2) "the defendant made an unprivileged publication of that statement to a third party," and (3) "that this publication caused damages." *Perfect Choice Exteriors, LLC v. Better Bus. Bureau of Cent. Ill., Inc.*, 99 N.E.3d 541, 547 (Ill. App. Ct. 2018). Here, The Daily Beast contends that Wedgewood cannot establish the damages element.[3]

[3] The Daily Beast also argues that Wedgewood's failure to identify a false statement is fatal to Count I. *See* Mot. Dismiss at 9; *see Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992) (finding that "[the plaintiff]'s failure to allege anything more than that the defendant lied . . . without even stating what those lies are" barred the plaintiff's defamation claim). Having concluded that Wedgewood's defamation claim fails on other grounds, the Court declines to reach this argument.

In a defamation case, the plaintiff may satisfy the damages requirement in one of two ways. First, "a statement is defamatory *per se*—meaning that damages are presumed—if its harm is obvious and apparent on its face." *Van Pelt v. Bona-Dent, Inc.*, No. 17 C 1128, 2018 WL 2238788, at *8 (N.D. Ill. May 16, 2018) (citation omitted). As relevant here, "words which impute the commission of a criminal offense" and "words that prejudice a party, or impute lack of ability, in his or her trade, profession or business" amount to defamation *per se*. *Kolegas*, 607 N.E.2d at 206. Second, "a statement is defamatory *per quod* if extrinsic facts are needed to establish that the statement is harmful to the plaintiff's reputation." *Van Pelt*, 2018 WL 2238788, at *9 (citing Myers *v. Levy*, 808 N.E.2d 1139, 1147 (Ill. App. Ct. 2004)). In a *per quod* action, "damage to the plaintiff's reputation is not presumed, and the plaintiff must prove special damages in order to recover." *Id.* Wedgewood maintains that his complaint establishes damages through both defamation *per se* and defamation *per quod*.

**A. Defamation *Per Se***

Wedgewood's primary argument is that by implying that he had solicited teenage girls—a criminal offense—The Daily Beast committed defamation *per se*. In her article, Lorenz wrote that Wedgewood "hit[ ] on underage girls via direct message." Article at 3. The "intended inference[ ] and imputation[ ]," Wedgewood warns, "are that [he] engaged in alleged sexual misconduct involving underage girls that is reasonably understood as a crime." Pl.'s Resp. Mot. Dismiss ("Pl.'s Resp.") at 6–7, ECF No. 28. The Court agrees that one interpretation of Lorenz's article is that

Wedgewood intentionally solicited minors to perform sexual acts. *See* 720 Ill. Comp. Stat. 5/11-6 (criminalizing "Indecent solicitation of a child").

But that is not the only plausible reading. Under the innocent construction rule, if a "statement may reasonably be interpreted as asserting something other than what is implicated by the [relevant] *per se* category, it is not actionable *per se*." *Van Pelt*, 2018 WL 2238788, at *9 (citing *Chapski v. Copley Press*, 442 N.E.2d 195, 199 (Ill. 1982)). Although the allegedly defamatory statements need not "state the commission of a crime . . . with the particularity of an indictment," see *Crinkley v. Dow Jones & Co., Inc.*, 456 N.E.2d 138, 153 (Ill. App. Ct. 1983), "a nondefamatory interpretation must be adopted if it is reasonable." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1302 (Ill. 1996).

Here, a reasonable reading of Lorenz's article is that although Wedgewood communicated with underage girls, he never meant to take things further. *See* 720 Ill. Comp. Stat. 5/11-6(a) (clarifying that indecent solicitation of a minor requires intent to commit sexual assault). Notably, The Daily Beast did not report that Wedgewood asked girls to share inappropriate pictures, meet him in person, or engage in sexual activity. *See Coghlan v. Beck*, 984 N.E.2d 132, 146 (Ill. App. Ct. 2013) ("[A] court must consider the [allegedly defamatory] statement[s] in context.") In those circumstances, Lorenz's article can reasonably be read as accusing Wedgewood of what is certainly questionable conduct, but not illegal conduct. As such, Wedgewood has failed to establish defamation *per se*.

Arguing in the alternative, Wedgewood attempts to fit Lorenz's article into a different category of defamation *per se*. The allegedly defamatory statements, Wedgewood insists, "prejudice[d] him in his profession." Mot. Dismiss at 9. But that is all Wedgewood says. Missing from his response is any explanation as to how the allegedly defamatory statements disrupted his business. *See Madison v. Frazier,* 539 F.3d 646, 655 (7th Cir. 2008) (citation omitted) ("[T]o succeed under the relevant categor[y] of defamation *per se* . . . a plaintiff must have been accused of lacking ability in his trade or doing something bad in the course of carrying out his job."). Indeed, he does not even state what his profession is. As such, the Court finds that Wedgewood has waived argument as to this issue. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("[U]ndeveloped arguments are waived."). In short, Wedgewood cannot state a claim for defamation *per se*.

### B. Defamation *Per Quod*

Wedgewood's effort to plead defamation *per quod* fares no better. To make out such a claim, a plaintiff must prepare "a specific accounting of [his] damages or an explanation of how the purported defamation caused them." *Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009). Wedgewood's vague references to "loss of income [and] loss of reputation," see Compl. ¶ 34, fall short of that high standard. *See Taradash v. Adelet/Scott-Fetzer Co.*, 628 N.E.2d 884, 888 (Ill. App. Ct. 1993) ("General allegations of damages, such as damages to an individual's . . . reputation or general economic loss, are insufficient to state a claim of defamation *per quod*."); *Lott*, 556 F.3d at 570 ("In Illinois courts and federal courts sitting in diversity, special damages must be

specifically stated in a *pro quod* claim."). Thus, Wedgewood cannot establish defamation *per quod*.

In sum, because Wedgewood does not merit presumed damages, and because he has not pinpointed special damages, he cannot satisfy the damages requirement of his defamation claim. Accordingly, Count I is dismissed.

## II. False Light

In Count II, Wedgewood alleges that Lorenz's article placed him in a false light that would be highly offensive to a reasonable person. *See Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 595 (Ill. App. Ct. 2015) (outlining the elements of a false light claim). But, as Wedgewood admits, his false light and defamation claims rise or fall together. *See* Pl.'s Resp. at 13; *see Seith v. Chi. Sun–Times, Inc.*, 861 N.E.2d 1117, 1130–31 (Ill. App. Ct. 2007) ("[B]ecause the plaintiff's unsuccessful defamation *per se* claim is the basis of his false-light claim, [that] claim fails as well."). And the Court has already concluded that Wedgewood's defamation claim must be dismissed. Thus, Count II is also dismissed.

## III. Intentional Infliction of Emotional Distress

For similar reasons, Wedgewood's intentional infliction of emotional distress ("IIED") claim fails as well. To prevail on such a claim, a plaintiff must allege three elements: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional

distress." *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas*, 607 N.E.2d at 211).

As a general matter, "a defendant's defamatory statements . . . do not clear the high hurdle for extreme and outrageous conduct." *Fields v. Jackson*, No. 16 C 1961, 2017 WL 4150682, at *5 (N.D. Ill. Sept. 19, 2017) (citing *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998)). Indeed, even "statements falsely imputing criminal conduct to [a plaintiff]" are insufficient to sustain an IIED claim. *See Bittman v. Fox*, 107 F. Supp. 3d 896, 905 (N.D. Ill. 2015). Following that logic, The Daily Beast's allegedly defamatory statements do not rise to the level of extreme and outrageous conduct. As a result, the Defendant's motion to dismiss Count III is granted.

## IV. Declaratory Judgment and Injunctive Relief

Finally, Wedgewood requests that the Court enter a declaratory judgment (Count IV) and injunctive relief (Count V) in his favor. Those counts, however, do not represent distinct causes of action. Rather, they are relevant only if one or more of Wedgewood's tort claims is viable. *See* Pl.'s Resp. at 16–17, ECF No. 28. As such, Counts IV and V are dismissed as well.

## Conclusion

For the reasons stated above, The Daily Beast's motion to dismiss is granted. Wedgewood is granted leave to file an amended complaint to address the deficiencies identified above. Such an amended complaint must be filed by April 8, 2020. If an amended complaint is not filed by that time, this case will be dismissed with prejudice.

**IT IS SO ORDERED.**

**ENTERED 3/11/20**

**John Z. Lee**
**United States District Judge**